UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

NORMAN SIMMONDS,
Inmate No. X0233489;

      Plaintiff,

v.

MELODY M. MADDOX, DeKalb
County Sheriff, in both her official
and individual capacities;

RANDY AKIES, Chief Deputy,
DeKalb County Sheriff's Office, in his
official capacity, only;

ANSON EVANS, Chief Deputy of
Administration, DeKalb County Jail,
in his official capacity, only;

DR. CURTIS CROCKER, Staff
Chaplain, DeKalb County Jail, in
both his official and individual
capacities;

DR. MOORE, Chief of Inmate
Medical Services, DeKalb County
Jail, in her official capacity, only;

TRINITY SERVICES GROUP, LLC,
a Florida profit corporation;

JACKSON, Food Service Director,
DeKalb County Jail and Trinity
Services Group, LLC, in his official
and individual capacities;

Case No.
Hon.

VERIFIED COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF AND
DEMAND FOR JURY TRIAL

1

DOE, Commander, Jail Division,
DeKalb County Jail, in his/her
official capacity, only;

     Defendants.

---

## VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff NORMAN SIMMONDS, by and through his undersigned counsel, files this Complaint for Declaratory and Injunctive Relief against DeKalb County Sheriff Officials MELODY M. MADDOX, RANDY AKIES, ANSON EVANS, DR. CURTIS CROCKER, DR. MOORE, TRINITY SERVICES GROUP, LLC, JACKSON, and DOE, and (collectively "Defendants"), for violations of the First, Eighth, and Fourteenth Amendments to the United States Constitution and the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. Sec. 2000cc *et seq.*, 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331, and Georgia Constitution. art. I, § 1, ¶¶ 2 and 4, and states as follows:

### Nature of this Action

1.    For decades and mostly without the need for judicial intervention, prisons and jails across the country have provided Muslims with meals before

dawn and at sunset so that they can observe without starving Ramadan's month of daily dawn-to-sunset fasting.

2.     Just as in the free world, Muslims in prisons and jails eat a morning meal—*suhoor*—before dawn to prepare for each day's fast and an evening meal—*iftar*—at sunset to break each day's fast. Prisons and jails take a variety of approaches to accommodating fasting Muslims, including via administratively simple options like providing Muslims with nonperishable bagged meals that detainees can eat in their cells when they so choose.

3.     But Dekalb County Jail charts a different course, offering Muslims no food on some days, offering meals on some days only when Simmonds and other Muslims must refrain from eating, and on other days providing about a third of the food given to others.

4.     It is a starvation diet imposed on Simmonds—and imposed because Mr. Simmonds takes his faith seriously and adheres to Islam's teachings about Ramadan that instruct him and other Muslims to refrain from eating and drinking between dawn and sunset during this month-long religious obligation.

5.     Jail officials deprive Simmonds of food for the same reason they deny him access to the clock he needs to figure out when he must pray and

when he can eat: malice. There is no other explanation for the cruel conduct documented here.

## Jurisdiction and Venue

6.    This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343 over Plaintiff's claims of violations of the First, Eighth and Fourteenth Amendments to the United States Constitution, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq., and 42 U.S.C. § 1983 pursuant to 28 U.S.C. § 1331.

7.    Plaintiff's claims for declaratory and injunctive relief are sought under 28 U.S.C. §§ 2201-2202, 28 U.S.C. § 1343, Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general, legal, and equitable powers of this Court.

8.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's claims of violations of Georgia law and Georgia Constitution art. I, § 1, ¶¶ 2 and 4.

9.    Plaintiff's claims for attorneys' fees and costs are predicated upon 42 U.S.C. §§ 1988 and 2000cc-2(d), which authorize the award of attorneys' fees and costs to prevailing parties, pursuant to 42 U.S.C. § 1983 and RLUIPA.

10.    DeKalb County Jail, where Plaintiff is detained, is an "institution" within the meaning of 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997.

11.    This Court has personal jurisdiction over Defendants because Defendants reside and conduct business in the State of Georgia.

12.    Venue is proper under 42 U.S.C. § 1391 as to all Defendants because Defendants operate within the geographical boundaries of the State of Georgia, and the substantial part of the acts described herein occurred within this District.

## Parties

13.    Plaintiff Norman Simmonds is a 42-year-old Muslim man detained at DeKalb County Jail ("DKC Jail") in Decatur, Georgia (Inmate No. X0233489). He was and is at relevant times a "person confined to an institution" as the term is defined in 42 U.S.C. § 2000cc *et seq.*

14.    Defendant Melody M. Maddox is the Sheriff of DeKalb County Sheriff's Office ("DKSO"). As Sheriff, Defendant Maddox's responsibilities encompass all functions associated with DKSO Headquarters and DKC Jail operations, including ensuring compliance with federal and state laws, regulations, standards, and guidelines and protecting the "health, safety and

welfare of individuals in custody."[1]  DKC Jail, where Plaintiff Simmonds is detained, was and is at all relevant times an "institution" as the term is defined in 42 U.S.C. § 2000cc-1(a) and 42 U.S.C. § 1997.  DKC Jail is located at 4425 Memorial Drive, Decatur, Georgia 30032. Defendant Maddox was and is at all relevant times a decisionmaker and possesses the authority and responsibility to formulate, establish, approve, and oversee the implementation of all policies, programs and procedures concerning DKC Jail, including all religious, medical, healthcare, and other dietary accommodations and policies, which are consistent with applicable federal and state laws and regulations.  Defendant Maddox is also responsible for securing, executing, overseeing, managing, and enforcing compliance of all procurement contracts DKSO executes, including DKSO's "Inmate Food Service Contract" with Trinity Group Services, LLC. Defendant Maddox is also responsible for the third and last step of the grievance process, whereby her decision either resolves or terminates the grievance process, and the grievance is considered exhausted. Defendant Maddox either denied or ignored all of Plaintiff Simmonds' grievances related to this action. Defendant Maddox personally engaged in discriminatory

---

[1] *See* About Us: DeKalb County Sheriff, *available at*:  https://www.dekalbsheriff.org/about-us/#SHERIFF-MELODY-M.-MADDOX (last accessed 4/16/2022).

behavior against Plaintiff Simmonds. Defendant Maddox is being sued in both her official and individual capacities.

15.     Defendant Randy Akies is the Chief Deputy of DKSO. Defendant Akies is a decisionmaker and possesses the authority and responsibility to formulate, establish, approve, oversee, and manage all DKC Jail services and operations including food service and all religious, medical, healthcare, and other dietary accommodations and policies. Defendant Akies is also responsible for overseeing, managing, and enforcing compliance of all procurement contracts DKSO executes, including DKSO's "Inmate Food Service Contract" with Trinity Group Services, LLC. Defendant Akies is being sued in his official capacity, only.

16.     Defendant Anson Evans is the Chief Deputy of Administration of DKC Jail. Defendant Evans is a decisionmaker and possesses the authority and responsibility of processing inmate requests, administering the grievance process, investigating complaints brought by detainees, and resolving complaints at the lowest possible level at the jail. Defendant Evans personally engaged in discriminatory behavior against Plaintiff Simmonds. Defendant Evans is being sued in his official capacity, only.

17.     Defendant Dr. Curtis Crocker is the Staff Chaplain at DKC Jail. Defendant Crocker is a decisionmaker and possesses the authority and

responsibility to formulate, establish, approve, and oversee the implementation of all DKC Jail policies and procedures concerning religious services, programs, and accommodations, including religious dietary accommodations and policies. Defendant Crocker also possesses the authority and responsibility to approve requests and accommodations of DKC Jail detainees that are required to meet their religious dietary requirements, as well as order meals that not only satisfy those requirements, but that continue to meet or exceed all federal and state laws, regulations, standards, and nutritional guidelines while maintaining their individual medical, health and/or other dietary requirements. Defendant Crocker possessed authority at all relevant times to approve Plaintiff Simmonds' religious accommodation requests and to resolve the issues that gave rise to this action. Defendant Crocker personally engaged in discriminatory behavior against Plaintiff Simmonds. Defendant Crocker is being sued in both his official and individual capacities.

18.    Defendant Dr. Moore is the Chief of Inmate Medical Services at DKC Jail. Defendant Moore is a decisionmaker and possesses the authority and responsibility to formulate, establish, approve, and oversee the implementation of all DKC Jail policies and procedures concerning medical and other healthcare services, programs, and accommodations, including

8

dietary accommodations and policies. Defendant Moore also possesses the authority and responsibility to approve requests and accommodations of DKC Jail detainees that are required to meet their individual medical and health dietary requirements, as well as order meals that satisfy those requirements and continue to meet or exceed all federal and state laws, regulations, standards, and nutritional guidelines while maintaining their religious dietary requirements. Defendant Moore personally engaged in discriminatory behavior against Plaintiff Simmonds. Defendant Moore is being sued in her official capacity, only.

19.    Defendant Trinity Services Group, LLC ("Trinity") is a profit corporation incorporated under the laws of Florida (EIN No. 59-3026703). Defendant Trinity's headquarters and principal office is located at 1260 Andes Blvd, Oldsmar, FL 34677. Defendant Trinity regularly and systematically conducts business in the State of Georgia. DKSO awarded Defendant Trinity a multi-year "Inmate Food Service" contract ensuring that all meals distributed to DKC Jail detainees and weekly menu cycles are reviewed and approved by a registered dietitian to ensure they meet or exceed all federal and state laws, regulations, standards, and nutritional guidelines as well as DKSO policies. Defendant Trinity is also responsible for preparing and distributing

specialized meals to DKC Jail detainees that meet their individual religious, medical, health and/or other dietary needs.

20.    Defendant Jackson is the Food Service Director at DKC Jail. Defendant Jackson is employed by Trinity, the food service provider and manager for detainees at DKSO. Defendant Jackson is responsible for implementing DKSO's "Inmate Food Service Contract" with Trinity Group Services, LLC. Defendant Jackson is a decisionmaker and possesses the authority and responsibility to formulate, establish, approve, and oversee the implementation of all DKC Jail policies and procedures concerning food preparation and management services, including specialized meals that are designed to meet individual religious, medical, health or other dietary needs. He also possesses the authority and responsibility to approve and order individual requests by DKC Jail detainees for individual religious, medical, health or other dietary accommodations. Defendant Jackson is responsible for creating weekly menu cycles and ensuring that all meals—including specialized meals—meet or exceed all federal and state laws, regulations, standards, and nutritional guidelines as well as DKSO policies, and for managing, preparing, and distributing those meals to DKSO detainees. Defendant Jackson was responsible at all relevant times for ensuring Plaintiff Simmonds was provided a nutritional and caloric intake that meets or exceeds

federal and state laws, regulations, standards, and guidelines on any given day. Defendant Jackson personally engaged in discriminatory behavior against Plaintiff Simmonds. Defendant Jackson is being sued in his official and individual capacities.

21.     Defendant Doe is the Jail Division Commander of DKC Jail. Defendant Doe is a decisionmaker in the second formal step of the grievance process and is responsible for taking steps to resolve complaints that are appealed if the Investigations Unit fails to resolve the complaint. Defendant Doe is being sued in his/her official capacity, only.

## Factual Background

### Prolonged and Sustained Food Deprivation, Insecurity and Manipulation

22.     Defendants have willfully and deliberately deprived Simmonds of enough food daily for the duration of his detention at DKC Jail.[2]

23.     Even before Simmonds started observing Ramadan's month of daily dawn-to-sunset fasts[3] on April 2, 2022, Defendants provided Simmonds

---

[2] Simmonds has been detained at DKC Jail since September 1, 2021.

[3] Ramadan is the ninth month of the Islamic calendar, which is based on a lunar calendar. Muslims worldwide are required to observe Ramadan as a month of fasting and spirituality. This annual observance is regarded as one of the Five Pillars of Islam. Among other things, while fasting from dawn until sunset, Muslims refrain from consuming food and drinking liquids. Muslims have a morning meal known as suhoor and cease eating at or before dawn, the time of the Fajr prayer; and Muslims break their fast by eating the iftar meal at sunset, the time of the Maghrib prayer. Because prayer and Ramadan mealtimes are based on the sun and vary each day, Muslims rely upon prayer schedules to determine the exact time each day. *See* **Exhibit A –**

at most approximately 1,525 calories and as little as 1,168 calories on any given day.

24.    Since Simmonds started observing the month of Ramadan on April 2, 2022, things have gotten worse.

25.    For three days of Ramadan, jail officials provided Simmonds no food at all.

26.    Another three days, he got approximately 1,010 to 1,367 calories of food.

27.    But more often than not, Simmonds received approximately 400 to 700 calories of food on a daily basis. This is a prolonged and sustained food deprivation jail officials have imposed on Simmonds.

28.    The deficiency in Simmonds' caloric intake and nutrition is severe and well below the minimum caloric intake requirements necessary to not only sustain his health, but to prevent the permanent and irreversible, life-threatening effects of starvation.

29.    And in fact, as would be expected, the detrimental effects of starvation have set in—hunger pangs, pain, dizziness, faintness, fatigue, weight loss—to name just a few.

---

**Decatur, Georgia - Islamic Prayer Times**, *also available at:*
https://www.islamicity.org/PrayerTimes/index.php?address=decatur,%20georgia# (last accessed on 4/17/2022).

30.    The extent of the harm on his body, malnutrition, muscle depletion, wasting away of body tissues, damage to his organs, and impact to his mental, psychological, physiological, and emotional health and well-being—not to mention the adverse impact on his preexisting health issues that include asthma, hypertension, prediabetes, and degenerative joint disease—has yet to be seen.

31.    The "Dietary Guidelines for Americans 2020-2025" issued by the U.S. Department of Health and Human Services and the U.S. Department of Agriculture estimates that Plaintiff Simmonds' daily caloric intake requirements—calculated based upon his age, sex, and physical activity levels—ranges from at minimum 2,600 to 2,800 per day.[4]

32.    To make matters worse, the forced imposition of hunger and starvation upon Simmonds has been coupled with food insecurity and food manipulation.

33.    Due to an 18-hour lockdown schedule, an irrational and animus-based prohibition on watches and clocks in the housing unit, the erratic times Defendants decide to distribute meals each day, and the specific times that

---

[4] *See* U.S. Department of Health and Human Services and the U.S. Department of Agriculture, *2020-2025 Dietary Guidelines for Americans*, December 2020 at 140, *available at:* https://www.dietaryguidelines.gov/resources/2020-2025-dietary-guidelines-online-materials (last accessed 4/17/2022)

Muslims like Simmonds must refrain from eating or drinking during Ramadan, Simmonds and other similarly situated Muslims are left locked in their cells for hours on end with no way of knowing whether jail officials will provide them food (and if so, how much) after sunset and before dawn, which is when Muslims observing Ramadan's daily fast may eat.

34.     During the morning meal distribution, cell doors are opened, and detainees line up to receive their meals—except Simmonds, and similarly situated Muslims, because he has to first run to the single kiosk at the opposite end of the housing unit to find out what time it is, whether he has any time left to eat, or if it's too late to eat his morning meal.

35.     The single kiosk, the same kiosk made available to all detainees in his housing unit to file inmate requests and grievances, talk to families, request medical assistance, among other things, is the only way for Simmonds to find out what time it is. This is because Defendants have repeatedly refused detainees' requests for time pieces – watches, personal clocks, or a single, visible wall clock in the unit.

36.     During Ramadan alone, morning meals for all detainees have been delivered from as early as 3:30 a.m. to as late as 7:00 a.m. and the lunch/dinner trays have been delivered from as early as 7:30 p.m. to as late as 11:30 p.m.

37.    From April 2, 2022—the start of Ramadan—to the date this Complaint was filed, jail officials provided Simmonds only three morning meals prior to dawn, and one of those morning meals came just ten minutes before dawn. The rest of the morning meals arrived after dawn when Simmonds had already started his fast.

38.    In the evenings, Simmonds is left locked in his cell for hours without knowing whether sunset has arrived so that he can break his fast—if even with food items he is able to collect from other detainees and ration in his cell.[5]

39.    The evening meal service is like the morning meal service. For evening meal service, the cell doors open, and detainees line up to receive their meals, while Simmonds and other Muslims rush to the kiosk to find out whether it is time to break their fast before also getting in line to receive an evening meal. Sometimes there is a tray for Simmonds, but on several days, jail officials did not provide Simmonds with any tray at all. When there is, it has been delivered haphazardly at any time between 8:30pm and 11:30pm.

40.    During the first week of Ramadan—the same week that Defendants gave Simmonds nothing to eat for three consecutive days—

---

[5] Detainees collecting food from other detainees and storing that food in their cell is considered by Defendants to be a violation of policy, specifically possession of contraband, that is subject to disciplinary action.

Defendants also revoked his commissary privileges, leaving him with no way to purchase anything to eat from the commissary either.

41.    As a result, Simmonds is left insecure as to whether he will eat each day, how much he will eat, whether he will sleep hungry that night, whether he will miss consecutive meals, and what the effects of starvation will be on his physical, mental, psychological, physiological, and emotional health and well-being.

42.    Defendants' refusal to provide Simmonds and other Muslims with adequate nutrition after sunset and before dawn during Ramadan is one part of a broader pattern of hostility to Simmonds' religious exercise. Defendants have also, for example, refused to process Plaintiff's repeated requests for a religious diet, which had the effect of lowering even further the amount of food Simmonds received from the jail.

43.    From his first intake at DKC Jail on September 1, 2021, until two days prior to the start of Ramadan, and multiple times in between, Simmonds requested a religious diet—a kosher meal that DKC Jail had previously made available to Muslims who observed similar strictures about food.[6]

---

[6] While DKC Jail does not offer an Islamic halal diet for Muslim detainees; however, it has in the past accommodated Muslim detainees with a kosher diet.  The kosher diet is the only religious diet DKC Jail offers its detainees.  Kosher is generally accepted by Muslims, including Simmonds, to be consistent with Islamic halal diet requirements.

44.    His requests were never even acknowledged, for seven months. He sent requests to the chaplain, to medical, to food service, and he followed up. He never received a response.

45.    Without a religious diet accommodation in place, Simmonds' only option was a vegan diet, a diet that at best provides a daily intake of 1,367 calories—calories that consist mostly of oatmeal, rice, beans, and bread—every single day.

46.    Specifically, the vegan breakfast ranges from 620 calories to 680 calories each day. It consists of approximately one cup of oatmeal, two plain tortillas, and a very small cup of apple juice, or occasionally milk.

47.    The vegan lunch rangers from 390 to 687 calories each day. It generally consists of approximately half a cup of rice, half a cup of beans, one-quarter cup of corn or green beans, and two pieces of bread.

48.    And the vegan dinner is a bag that includes two pieces of bread and a jelly packet. This is 168 calories plus a serving of peanut butter. Simmonds is allergic to peanut butter and has been accommodated by simply not getting any peanut butter with his meals, with no replacement.

49.    For reasons unknown to Simmonds, Muslims do not receive the dinner during Ramadan.

50.     Had Defendants approved Simmonds' accommodation requests for a religious diet, for the times in Ramadan that he did receive a meal, he would have at least received meals that met or exceeded the caloric and nutritional guidelines.

51.     Instead, Chaplain Crocker refused to approve Simmonds' religious diet accommodation, along with the other Muslim detainees in his unit, on the basis that he needed to "test their devoutness."

### DKC Jail Can Provide Simmonds
### With Meals That Meet Caloric and Nutritional Guidelines
### at Sunset and Before Dawn

52.     DKC Jail is one of the largest detention facilities in the country, with 1,974 cells capable of housing up to 3,543 detainees. Its average daily population typically ranges from approximately 2,800 to 3,500 detainees. Currently, DKC Jail houses over approximately 1,400 detainees.

53.     DKC Jail awarded a procurement contract to Trinity Services Group, LLC, (Contract No. 1103429)[7] to prepare, service and provide food service for detainees and staff, and to provide food operation and management

---

[7] *See* DeKalb Procurement Contracts, March 16, 2022, *available at*: https://www.dekalbcountyga.gov/sites/default/files/2022-03/DeKAlb_Procurement_Contracts_Mar%202022.pdf (last accessed on 4/16/2022)

services for detainees at DKC Jail (hereinafter the "Trinity contract"). Upon information and belief, DKSO renewed that contract, and it remains active.[8]

54.    Pursuant to the Trinity contract, DKSO is responsible for providing the kitchen facilities, permanently installed food service equipment, and storage areas. DKSO also retains for itself exclusive authority to approve all menus and meals.[9]

55.    DKC Jail detention staff are responsible for delivering meals from the kitchen to the housing units and distributing them to the detainees. Meals are distributed two times daily, once in the morning and once in the afternoon.[10]

56.    If a detainee is unable to eat the morning meal because of a court appearance that conflicts with the meal delivery times, DKC Jail detention staff accommodate that detainee's schedule by providing that meal before the detainee leaves that morning.[11]

57.    Also pursuant to the Trinity contract, Trinity is required to: 1) provide "meals and food service that meet or exceed all laws of the State of

---

[8] *See* Exhibit A, Trinity Procurement Contract at 55.  *See also* id; Trinity Services Group contract(s) on the Georgia Procurement Registry, *available at:*
https://ssl.doas.state.ga.us/gpr/showSupplierDetails?supplierId=277193275 (last accessed on 4/16/2022) and
https://ssl.doas.state.ga.us/gpr/showSupplierDetails?supplierId=277135856 (last accessed on 4/16/2022)
[9] *Id* at 56.
[10] Exhibit B, DeKalb County Jail Inmate Handbook, at 11.
[11] *Id.* at 11-12.

Georgia, and federal laws and regulations relating to standards for food service for correctional facilities"; 2) prepare meals that meet State and Federal nutritional guidelines and the dietary needs of the detainee population; 3) serve meals that are "at proper temperature, nutritious, wholesome and palatable meals including lunches, therapeutic/religious diets, and all other meals necessary"; 4) recommend and implement upon DKSO written approval a 28-day cycle menu with three quality meals per day (breakfast, lunch, dinner, and sack meal), seven days per week with no more than fourteen hours between evening meal and breakfast the following day; 5) provide two hot meals and one cold meal daily to each detainee; 6) provide a weekly average of 2,650-3,000 calories total daily caloric intake; and, 7) have in place a quality assurance program which ensures that all meals meet the DKSO's dietary requirements and the "Dietary Guidelines for Americans 2015-2020" issued by the U.S. Department of Health and Human Services and the U.S. Department of Agriculture[12] (hereinafter the "Dietary Guidelines").[13]

---

[12] Ex. A at 55-56.
[13] U.S. Department of Health and Human Services and the U.S. Department of Agriculture, *2015-2020 Dietary Guidelines for Americans*, 8th Edition, December 2015. *Available at:* https://health.gov/sites/default/files/2019-09/2015-2020_Dietary_Guidelines.pdf (last accessed on 4/17/2022)

58.     On any given day, the average daily number of calories per week of meals distributed by Defendants to DKC Jail detainees is between 2600 and 2650 calories.[14]

59.     All meals and weekly menu cycles are also approved by an on-call Trinity registered dietitian who is responsible for ensuring all meals and menu cycles comply with applicable federal and state laws, regulations, standards, and nutritional guidelines.[15]

60.     Defendants are currently providing the general DKSO detained population (approximately 1,400 detainees) with three meals daily, based on full weekly cycles, that accommodate various dietary requirements, including, but not limited to the following diets:  heart healthy, vegan, kosher, gluten-free, diabetic, and "any diet" and "everything that you could imagine" to accommodate the needs of detainees.[16]

61.     Defendants can Plaintiff Simmonds and similarly situated Muslim detainees with a proper caloric and nutritional diet that complies with applicable federal and state laws, regulations, standards, and nutritional guidelines because it provides a proper caloric and nutritional diet that

---

[14] *See* id.

[15] *See* id.

[16] *See* DeKalb Sheriff's Office – Virtual Tour YouTube Video at 25:50 – 27:10, *available at*: https://www.youtube.com/watch?v=bI9C-mBfTqE (last accessed on 4/16/2022).

complies with applicable federal and state laws, regulations, standards, and nutritional guidelines to all other detainees at DKC Jail.

62.     Defendants can Plaintiff Simmonds with a daily caloric intake of 2,600 to 2,800 calories per day—his daily caloric intake requirements calculated based upon his age, sex, and physical activity levels in accordance with the Dietary Guidelines—because jail officials provide other detainees that amount of food, across all the diets offered at the facility.

63.     Defendants are capable of providing Plaintiff Simmonds and similarly situated Muslim detainees with a proper caloric and nutritional religious halal diet that is consistent with their Islamic beliefs because: 1) the kosher meals that Defendants provide detainees are prepackaged, frozen meals that meet or exceed daily caloric and nutritional guidelines; 2) Defendants accommodate kosher diets within two days; 3) because Defendants provide Jewish detainees with kosher meals; and, 3) because the Defendants have provided Muslim detainees with kosher meals in the past.

64.     Defendants are capable of providing Plaintiff Simmonds and similarly situated Muslim detainees two Ramadan meals daily, one at sunset and the other before dawn, in accordance with their sincerely held religious beliefs because: (1) Defendants have done the morning meal service before dawn a few times, allowing Plaintiff and other Muslims to eat prior to

beginning their daily fast, (2) Defendants have done the evening meal service at sunset a few times, allowing Plaintiff and other Muslims to end their fast at the time Islam directs them to, and (3) Defendants provide meals at alternate times as the need arises in order to accommodate the court schedules of individual detainees.

**Simmonds Has Exhausted**
**All Available Administrative Remedies**

65.    On September 30, 2021, Simmonds filed a grievance directed to the Jail Division Commander that stated that being locked in a cell without being able to tell the time "makes it impossible to pray at the correct time which is a requirement for muslims…"  He requested that he and other Muslims be permitted to purchase small clocks or watches.

66.    On October 5, 2021, his grievance was denied, and he was directed to go to the Commissary.

67.    On October 7, 2021, Simmonds appealed and explained that he had already spoken to the Commissary Manager, and he was told only a member of the Administration can make a request to add an item to the Commissary.

68.    That same day, his appeal was denied with the following reason: "Please review the time on the Kiosk. This will assist you with keeping up with the time Sir."

69.    Simmonds appealed again the following day and stated that he cannot look at the time on the kiosk while he is locked in the cell, which is the reason he filed the grievance.

70.    His appeal was ignored, and Simmonds exhausted all available administrative remedies related to this grievance. (Grievance No. 6153378).

71.    Simmonds filed a second grievance on October 6, 2021, regarding the same issue, stating that "muslim inmates need to know the time in order to fulfill our religious obligations."

72.    His grievance was denied on October 18, 2021, simply stating that "This is not a grievance, submit your suggestions on a inmate action form to commissary."

73.    The following day, he filed an appeal on October 19, 2021, and said that "this grievance [sic] is in regards to the jails violation of the religious freedom restoration act as well as RLUIPA because the refusal to provide muslim inmates with access to the time during lockdown hours substantially burdens my exercise of religion denying us the ability to pray at specific times which is a requirement for muslims."   He also requested the grievance be

directed to the appropriate division "if the administration wont correct the issue."

74.    That same day, his appeal was denied eight minutes later, and he was directed to submit an inmate action form to the Chaplain.

75.    He appealed the grievance again the same day stating again that he was filing a grievance on the basis that the religious rights of Muslims are being violated and requested that his grievance be forwarded to the appropriate person who can resolve his grievance if the administration refuses to resolve his complaint.

76.    His appeal was denied again three minutes later, and it directed him again to submit his "concerns/suggestions" to the Chaplain on an inmate action form. Simmonds exhausted all available administrative remedies related to this grievance. (Grievance No. 6197253).

77.    On October 13, 2021, Simmonds filed a third grievance regarding the same issue, this time directed to the Commissary saying that "the muslim inmates need to be able to have access to the time we are locked in our cells so [we] can fulfill our religious obligations which require us to pray at specific times and most of these times we are locked without access to the time."

78.    The grievance was denied on October 27, 2021, and Simmonds was told to direct his request to the jail instead. (Grievance No. 6240171)

25

79.    On October 19, 2021, Simmons submitted an Inmate Action Form to the Chaplain requesting watches or clocks available so that he other Muslim inmates can freely practice their faith by being able to pray at the specific times Muslims are required to pray when they are locked in their cells. Defendants ignored this request was ignored.

80.    On October 20, 2021, Simmonds submitted an Inmate Action Form to the Commissary requesting watches or small clocks to be added to the Commissary so that he other Muslim inmates can tell the time to pray when they are locked in their cells. He also states that he sent a request to the administration and was directed to submit a request to the Commissary. The following day he received a response that they would investigate the matter. Simmonds has not received a response since.

81.    On October 27, 2021, Simmonds submitted an Inmate Action Form to Inmate Services and requesting to see the Chaplain and made the same request. He received a denial of his request on November 11, 2021, stating that "[t]he only watch you will receive is by looking at the kiosk sir. Watches are prohibited."

82.    On January 4, 2022, Simmonds filed a fourth grievance regarding the same issue, and saying that Defendants are violating his religious rights

and he has tried reaching out to the Chaplain and the Administration, and he has either been ignored or his request for assistance has been denied.

83.    On January 24, 2022, his appeal was denied, and he received an instruction that said, "submit your comments on a inmate action form."

84.    That same day, Simmonds responded that he already submitted three inmate action forms, one to the Chaplain, a second to the administration, and a third to the shift commander. However, each of them either ignored him or denied assistance.

85.    His appeal was denied six minutes later with the same reason: "Resubmit your comments on a inmate action form."

86.    Simmonds appealed again the following day, stating that the administration has refused to address the discrimination and remedy his complaint.

87.    His final appeal was ignored. Simmonds exhausted all available administrative remedies related to this grievance. (Grievance No. 6761947).

88.    On December 30, 2021, Simmonds submitted an Inmate Action Form to the Chaplain and Inmate Services requesting to be placed on the kosher/halal diet. This request was ignored.

89.    On January 27, 2022, Simmonds filed a grievance that he was being discriminated against based on his religion because he is being denied a

halal/kosher diet that he is eligible to receive. He also stated that he submitted a request to the Chaplain, Medical, and Administration, and provided his religious leader's number to Administration. Simmonds says that he tried "going through every channel," and still has not received his religious meal. On the other hand, when Jewish detainees request a kosher diet, "they receive it within days but in my case it has been months…" This grievance was ignored, and it was not assigned a grievance number. Simmonds exhausted all available administrative remedies related to this grievance.

90.     On April 4, 2022, Simmonds filed a grievance that he was not being discriminated against by not being provided a halal meal accommodation and enough food during Ramadan so that he can fast in accordance with his sincerely held religious beliefs. Simmonds has requested a copy of this grievance but has been unable to obtain it. As of this filing, Defendants have not yet responded to this grievance or resolved Simmonds' complaint.

91.     No emergency grievance process exists at the facility. So Plaintiff completed the only quasi-emergency option the Dekalb County offers .by sending a direct message to the Sheriff. Unlike the grievance forms, this option is not available on the inmate kiosk.

92.     To complete this process, Dekalb County Jail staff told Simmonds he would have to write a letter and mail it to Sheriff Maddox, at his own

expense. So Simmonds wrote the letter. But the facility refused to give Simmonds the specific address to which these complaints must be sent, further defeating Simmonds' ability to effectuate any solution by the end of the one-month Ramadan period.

93.    At any rate, according to the handbook, the Sheriff has 30 days to respond, forward the complaint back to the facility, or ignore it completely, rendering the entire process futile regardless.

94.    Because the grievance process takes over a month to complete—and indeed, Defendants have 30 days to respond to the initial grievance Simmonds filed on April 4—any grievance result would only occur after Ramadan ended. As a result, the grievance process is unavailable or Simmonds has sufficiently exhausted it. *See generally Ramirez v. Collins*, 595 U.S. ----, 21-5592, slip op. at 6-10; *Ross v. Blake*, 578 U.S. 632, 643 (2016).

## Count I

## Violation of Religious Land Use and Institutionalized Persons Act

### (Religious Exercise)

### (Against Official Capacity Defendants Only)

95.    Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

96.    Defendants' refusal to provide Plaintiff with a balanced nutritional

diet containing between 2,600 and 2,800 calories on any given day in Ramadan chills Plaintiff's right to free exercise of religion.

97.    Defendants have imposed onerous restrictions on Plaintiff that they did not impose on detainees of other faith backgrounds, including subjecting Plaintiff and other Muslim detainees to scrutiny of their religious adherence as a condition of eligibility for kosher meals.

98.    Defendants have deprived and continue to deprive Plaintiff of his right to the free exercise of religion as secured by the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc(a) et seq., by imposing and implementing an unconstitutional and discriminatory policy that substantially burdens Plaintiff's religious exercise.

99.    Defendants' above-mentioned unlawful actions caused and continues to cause Plaintiff harm because it forces him to choose, daily during Ramadan, between violating his core religious belief of fasting during the month of Ramadan and foregoing his right to receiving a menu that meets minimum caloric and nutritional standards.

100.    During Ramadan, Defendants have arbitrarily and unjustly prevented Plaintiff and other fasting Muslim detainees from receiving a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan.

101.  Defendants have not established a dietary policy requiring detainees of other faiths participating in the religious kosher diet to receive meals that do not meet minimum nutritional, health, or safety standards.

102.  Defendants have imposed a substantial burden on Plaintiff's and other fasting Muslim detainees' exercise of Islam.

103.  Defendants' imposition of such a burden is not in furtherance of a compelling government interest and is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

104.  Plaintiff is entitled to a declaration that Defendants' above-described conduct causes a substantial burden to the free exercise of Plaintiff's religion, is not justified by a compelling government interest, and is in violation of RLUIPA.

105.  Plaintiff is entitled to issuance of an injunction granting the relief described in the Prayer for Relief below.

106.  Defendants' unlawful actions caused Plaintiff harm, and Plaintiff is entitled to injunctive and declaratory relief, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff requests this Honorable Court grant

declaratory relief and injunctive relief barring Defendants from prohibiting Plaintiff and other fasting Muslim detainees from receiving a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan. Plaintiff further requests any other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## Count II

### Violation of Religious Land Use and Institutionalized Persons Act
### (Discrimination on the Basis of Religion)

### (Against Official Capacity Defendants Only)

107.  Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

108.  Defendants' above-described conduct treats Plaintiff and other Muslim detainees observing the Ramadan fast on less than equal terms with other religious and non-religious detainees.

109.  Defendants' above-mentioned unlawful actions caused and continues to cause Plaintiff and other Muslim detainees observing the Ramadan fast harm because it forces him to choose daily between violating his core religious beliefs by fasting during the month of Ramadan and foregoing his right to receive a menu that meets minimum nutritional, health, and safety

32

standards.

110.   Defendants have deprived and continue to deprive Plaintiff, and other fasting Muslim detainees, of his right to be free from religious discrimination as secured by the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc(a) et seq., by imposing and implementing a policy in a manner that discriminates on the basis of religion.

111.   Defendants have imposed onerous restrictions on Plaintiff that Defendants did not impose on detainees of other faith backgrounds, including subjecting Plaintiff and other Muslim detainees to scrutiny of their religious adherence as a condition of eligibility for their inclusion on the religious diet list.

112.   Defendants have imposed onerous restrictions on Plaintiff that Defendants did not impose on detainees of other faith backgrounds.

113.   Defendants have arbitrarily and unjustly established a policy requiring Plaintiff and other Muslim detainees observing the Ramadan fast to receive meals that do not meet minimum nutritional or safety or medical standards during the month of Ramadan.

114.   Defendants have not established a dietary policy requiring detainees of other faith backgrounds participating in the religious kosher diet to receive meals that do not meet minimum or safety or medical nutritional

standards.

115.  Plaintiff is entitled to a declaration that Defendants' above-described conduct constitutes discrimination on the basis of Plaintiff's religion, is not justified by a compelling government interest, and is in violation of RLUIPA.

116.  Plaintiff is entitled to issuance of an injunction granting the relief described in the Prayer for Relief below.

117.  Plaintiff is entitled to issuance of an injunction enjoining Defendants from denying Plaintiff a proper caloric and nutritional diet during Ramadan.

118.  Defendants' unlawful actions caused Plaintiff harm and Plaintiff is entitled to injunctive and declaratory relief, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff requests this Honorable Court grant declaratory relief and injunctive relief barring Defendants from prohibiting Plaintiff and other fasting Muslim detainees from receiving a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan. Plaintiff further requests any other relief this

Court deems just and proper including costs and attorneys' fees incurred in this action.

## Count III

## Violation of First and Fourteenth Amendment to the United States Constitution

### (Free Exercise of Religion)

119.    Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

120.    Defendants' above-mentioned unlawful actions caused and continues to cause Plaintiff harm because it forces him to choose on a daily basis between violating his core religious beliefs by fasting during the month of Ramadan and foregoing his right to receive a menu that meets minimum nutritional, health, and safety standards.

121.    Defendants' above-mentioned unlawful actions chill Plaintiff's right to free exercise of religion.

122.    Defendants have imposed onerous restrictions on Plaintiff that have not been imposed on detainees of other faith backgrounds, including subjecting Plaintiff and other Muslim detainees to scrutiny of their religious adherence as a condition of eligibility for their participation in Ramadan.

123.    Defendants have arbitrarily and unjustly required Muslim

detainees to receive meals that do not meet minimum caloric and nutritional standards during the month of Ramadan.

124.   Defendants have not established a dietary policy requiring detainees of other faiths participating in the religious kosher diet to receive meals that do not meet minimum nutritional standards.

125.   The restrictions imposed on Plaintiff and other Muslim detainees observing the Ramadan fast have imposed a substantial burden on their exercise of Islam.

126.   Imposition of such a burden is not in furtherance of a compelling government interest and is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

127.   Plaintiff is entitled to a declaration that Defendants' above-described conduct causes a substantial burden to the free exercise of Plaintiff's religion, is not justified by a compelling government interest, and is in violation of Plaintiff's First and Fourteenth Amendment rights to their free exercise of religion.

128.   Plaintiff is entitled to issuance of an injunction granting the relief described in the Prayer for Relief below.

129.   Plaintiff is entitled to issuance of an injunction enjoining Defendants from denying Plaintiff and other Muslim detainees observing the

Ramadan fast a proper caloric and nutritional diet.

130.   Defendants' unlawful actions caused Plaintiff harm and Plaintiff is entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff requests this Honorable Court grant declaratory relief and injunctive relief prohibiting Plaintiff and other fasting Muslim detainees from receiving a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan. Plaintiff further requests compensatory and punitive damages against the Defendants sued in their individual capacity, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## Count IV
## Violation of First and Fourteenth Amendment to the United States Constitution

### (Equal Protection)

131.   Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

132.   Defendants' above-described conduct treats these detainees on less

than equal terms with other religious and non-religious detainees, thereby creating a denominational preference against Islam as a religion.

133. Defendants' above-mentioned unlawful conduct caused and continues to cause Plaintiff and other Muslim detainees observing the Ramadan fast harm because it forces him to choose on a daily basis between violating his core religious beliefs by fasting during the month of Ramadan and foregoing his right to receiving a menu that meets minimum nutritional standards.

134. Defendants have deprived and continue to deprive Plaintiff and other Muslim detainees observing the Ramadan fast of his right to equal protection of the laws as secured by the Fourteenth Amendment to the United States Constitution, by imposing and implementing a policy in a manner that discriminates on the basis of religion.

135. Defendants have imposed onerous restrictions on Plaintiff that have not been imposed on detainees of other faiths.

136. Defendants have imposed onerous restrictions on Plaintiff that have not been imposed on detainees of other faith backgrounds, including subjecting Plaintiff and other Muslim detainees to scrutiny of their religious adherence as a condition of eligibility for their participation in religious services and accommodations, including fasting during Ramadan.

137. Defendants have arbitrarily and unjustly established a policy requiring Muslim detainees to receive meals that do not meet minimum caloric and nutritional standards during the month of Ramadan.

138. Defendants have not established a dietary policy requiring detainees of other faiths participating in the religious kosher diet to receive meals that do not meet minimum nutritional standards.

139. The restrictions imposed on Plaintiff is unconstitutional and have substantially burdened their religious exercise.

140. The restrictions imposed on Plaintiff have imposed a substantial burden on Plaintiff's exercise of Islam.

141. Imposition of such a burden is not in furtherance of a compelling government interest and is not the least restrictive means of furthering any governmental interest, compelling or otherwise.

142. Plaintiff is entitled to a declaration that Defendants' above-described conduct causes a substantial burden to the free exercise of Plaintiff's religion, discriminates against Plaintiff's religion, is not justified by a compelling government interest, and is in violation of Plaintiff's Fourteenth Amendment right to equal protection of the laws.

143. Plaintiff is entitled to issuance of an injunction granting the relief described in the Prayer for Relief below.

144.    Defendants' unlawful actions caused Plaintiff harm and Plaintiff is entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff Requests this Honorable Court grant declaratory relief and injunctive relief prohibiting Plaintiff and other fasting Muslim detainees from receiving a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan. Plaintiff further compensatory and punitive damages against the Defendants sued in their individual capacity, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

### Count V

### Violation of Eighth and Fourteenth Amendment to the United States Constitution

### (Cruel and Unusual Punishment)

145.    Plaintiff hereby realleges and incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

146.    Under the Eighth Amendment, those convicted of crimes have the right to be free from cruel and unusual punishment. Under the Fourteenth Amendment, detainees have at least the same rights as those convicted have

under the Eighth Amendment.

147. The Eighth Amendment imposes a duty on Defendants to provide humane conditions of confinement, including insuring, among other things, that detainees receive adequate food. *See Farmer v. Brennan,* 511 U.S. 825 (1994).

148. Defendants, acting under color of state law, took Plaintiff into physical police custody. In doing so, they established a special custodial relationship with Plaintiff, giving rise to affirmative duties on their part to secure and ensure that Plaintiff would be given adequate food and to secure for Plaintiff the constitutionally protected rights identified above.

149. Defendants, acting under color of state law, violated Plaintiff's above-stated constitutionally protected rights by wrongfully denying them of adequate food.

150. Defendants, acting under color of law, owed Plaintiff the duty to provide nutritious, well-balanced, and healthy meals that comport with government health guidelines.

151. Defendants' deprivation of a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan is objectively sufficiently serious in that it failed to provide Plaintiff adequate food and a humane condition of confinement.

152. Defendants failed to take adequate measures to ensure that Plaintiff was receiving adequate food.

153. Defendants subjectively perceived, or should have subjectively perceived, Plaintiff's complaints regarding the inadequacy of food.

154. Defendants' acts and omissions were sufficiently harmful to evidence a substantial risk of serious harm to Plaintiff and other Muslim detainees observing the Ramadan fast.

155. Defendants' acts and omissions were sufficiently harmful to offend evolving standards of decency in violation of the Eighth Amendment.

156. Defendant' acts and omissions in depriving Plaintiff of a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan were such that they denied Plaintiff and other Muslim detainees the minimal civilized measure of life's necessities.

157. Defendants' actions while acting under color of state law, in denying Plaintiff a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan, amounts to cruel and unusual punishment and excessive force in violation of their constitutionally protected rights as stated above.

158. Defendants' conduct as outlined above, was so grossly incompetent, inadequate, or excessive so as to shock the conscience or to be

42

intolerable to fundamental fairness and violates the Eighth Amendment prohibition against cruel and unusual punishment.

159.  Defendants, acting under the color of state law, authorized, tolerated, ratified, permitted, or acquiesced in the creation of policies, practices, and customs, establishing a de facto policy of depriving Plaintiff and other Muslim detainees observing the holy fast during Ramadan with a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan.

160.  Defendants' policies, customs and practices were conducted willfully and with wanton disregard and with the spirit of gross negligence, were the direct and deliberate cause of constitutional deprivations including Plaintiff's rights to liberty and due process and were the direct cause of Plaintiff's cruel and unusual punishment and excessive force.

161.  As a direct and proximate result of these polices, practices and customs, Defendants deprived Plaintiff of his constitutionally protected rights as described above.

162.  As a direct and proximate result of these polices, practices and customs, Plaintiff was forced to choose on a daily basis during the months of Ramadan whether to adhere to their sincerely held religious beliefs or sacrifice their basic nutritional needs.

43

163.   As a direct and proximate result of these polices, practices and customs, Plaintiff and other fasting Muslim detainees suffered and will continue to suffer from starvation, weight loss, severe hunger pangs, headaches, dizziness, among other things.

164.   As a result of their conduct described above, Defendants are also liable under 42 U.S.C. § 1983.

165.   Plaintiff is entitled to a declaration that Defendants' conduct described above is a violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

166.   Plaintiff is entitled to issuance of a permanent injunction granting the relief described in the Prayer for Relief below.

167.   Plaintiff is entitled to issuance of an injunction enjoining Defendants from denying Plaintiff a proper caloric and nutritional diet on any given day, including during Ramadan.

168.   Defendants' unlawful actions caused Plaintiff harm and Plaintiff is entitled to injunctive and declaratory relief, compensatory and punitive damages, in addition to all such other relief this Court deems just and proper including costs and attorneys' fees in this action.

WHEREFORE, Plaintiff requests this Honorable Court grant declaratory relief and injunctive relief barring Defendants from prohibiting Plaintiff and other fasting Muslim detainees from receiving a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan, similar in amount to the food provided to others at the DKC Jail. Plaintiff further requests compensatory and punitive damages against the Defendants sued in their individual capacity, plus all such other relief this Court deems just and proper including costs and attorneys' fees incurred in this action.

## **Prayer for Relief**

WHEREFORE, Plaintiff requests that this Honorable Court enter judgment in his favor and against Defendants on each and every count in this Complaint, and enter an Order awarding the following relief:

1. A declaratory judgment that:

   a. Defendants' Ramadan policies, practices, and customs violate the First, Eighth and Fourteenth Amendments to the Constitution of the United States, the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), and 42 U.S.C. § 1983;

45

b.    Defendants' conduct and policy constitutes cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution;

c.    Defendants' denial of a balanced nutritional diet containing between 2,600 and 2,800 calories to Simmonds and similarly situated Muslim detainees on any given day, including during Ramadan, constitutes a violation of the First Amendment to the United States Constitution and creates a chilling effect on Plaintiff's free exercise of religion;

d.    Defendants' denial of Plaintiff's requests for a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan is a substantial burden to the free exercise of Plaintiff's religion and is not justified by a compelling government interest;

e.    Defendants' conduct and policy treats Muslim detainees on less than equal terms with other religious and non-religious detainees;

f.    Defendants' conduct and policy entails intrusive inquiry into individual religiosity and adherence to the Defendants' establishment of a preferred form of Islam;

2.    An injunction that:

    a.    Enjoins Defendants from assessing the devoutness of Muslim detainees to determine eligibility for the religious kosher diet or any other religious accommodation;

    b.    Enjoins Defendants from denying Plaintiff and other fasting Muslim detainees a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan, because Defendants' denial of the proper caloric and nutritional diet forces Plaintiff, who have a religious basis for fasting during the month of Ramadan, to choose, on a daily basis, between violating his core religious beliefs and receiving a menu that meets minimum health and nutritional standards;

    c.    Requires Defendants to remedy the constitutional and statutory violations identified above, including, but not limited to, eliminating any existing policy whereby Plaintiff and other Muslim detainees, and others similarly situated, are denied a balanced nutritional diet containing between 2,600 and 2,800 calories on any given day, including during Ramadan;

3.    An award of compensatory damages against the Defendants

pursuant to 42 U.S.C. § 1983.

4.     An award of punitive damages against the Defendants sued in their individual capacities only pursuant to 42 U.S.C. § 1983.

5.     An award of attorneys' fees, costs, and expenses of all litigation, pursuant to 42 U.S.C. § 1988; and,

6.     Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

NOW COMES Plaintiff, by and through their undersigned counsel, and hereby demand a jury trial of the above-referenced causes of action so triable.

Dated: April 18, 2022                              Respectfully Submitted,

**Counsel on American-Islamic Relations Georgia Chapter**

By: /s/ Murtaza Khwaja

Murtaza Khwaja (750003)

mkhwaja@cair.com

Javeria Jamil (144674)

j-jamil@cair.com

235 Peachtree Street, Suite 901

Atlanta, GA 30303

Phone: (404) 239-2086

Fax: (470) 570-0389

**CAIR LEGAL DEFENSE FUND**

Lena F. Masri (VA 93291)°

lmasri@cair.com

Gadeir I. Abbas (VA 81161)* °

gabbas@cair.com

Justin Sadowsky (VA 73382) °

jsadowsky@cair.com

Kimberly Noe-Lehenbauer (OK 34744)** °

knoelehenbauer@cair.com

453 New Jersey Ave., S.E.

Washington, DC 20003

Phone: (202) 742-6420

Fax: (202) 488-0833

*Mr. Abbas licensed in VA, not in D.C. Practice limited to federal matters.*

49

**\*\*Ms. Noe-Lehenbauer licensed in OK, not in D.C. Practice limited to federal matters.**

*º Application pro hac vice forthcoming.*