# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| NORMAN SIMMONDS, )<br>Inmate X0233489, )<br>  )<br>  Plaintiff, )<br>  )<br>v. )<br>  )<br>MELODY M. MADDOX, et al., )<br>  )<br>  Defendants. )<br>_____ ) | Case No. 1:22-cv-01479 VMC<br>Hon. Victoria M. Calvert |

### SHERIFF MELODY M. MADDOX'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEMENT
### [Doc. 100]

COMES NOW, Sheriff Melody M. Maddox[1], by and through the undersigned counsel, and responds to Plaintiff's Emergency Motion to Enforce Settlement and shows this Honorable Court as follows:

### INTRODUCTION

Plaintiff Norman Simmonds has been housed in the DeKalb County jail since September 1, 2021, awaiting trial on murder charges. On March 15, 2024, Mr.

---

[1] Plaintiff incorrectly and repeatedly references the "County" as having failed to adhere to the terms of the Settlement Agreement. As a point of clarification, Sheriff Melody M. Maddox, a constitutional officer and non-County employee, signed and executed the settlement agreement of which the County's only involvement was paying the monetary portion.

Simmonds filed a Motion to Enforce the Settlement Agreement entered January 2, 2024, contending that he has not been receiving the required 2,500 calories as established by the agreement. For the reasons stated more fully below, Plaintiff's motion and request for attorney's fees should be denied.

### ARGUMENT AND CITATION OF AUTHORITY

**I. Plaintiff's self-serving declaration lacks foundation and should not be considered.**

In Plaintiff's self-serving declaration, he contends that he "lost so much weight that the facility's medical practitioner ordered [he] receive double portions of whatever they fed [him] so [he] could regain to a healthy weight." **See Simmonds' March 14, 2024, Declaration at ¶ 1. [Doc. 100-1].** Quite to the contrary, the Declaration of the DeKalb County Sheriff's Office of Health Services Manager, who has access to Plaintiff's medical charts, states the following: (a) on January 26, 2022, Mr. Simmonds weighed in at 168 lbs. **Martin Declaration at ¶ 4 (attached hereto as Exhibit A)**; (b) on October 18, 2022, Mr. Simmonds weighed in at 173 lbs. **Id. at ¶ 5**; (c) on February 21, 2023, Mr. Simmonds weighed in at 175 lbs. **Id. at ¶ 6**; (d) on December 26, 2023, Mr. Simmonds weighed in at 178 lbs. **Id. at ¶ 7.** Most recently, on March 20, 2024, Plaintiff refused to be weighed. **Id. at ¶ 11.**

It stands to reason that Plaintiff has not "lost so much weight" in the facility, but in fact, has *gained* weight during his incarceration. Yet, despite Plaintiff's weight gain, and for reasons that unfortunately were not documented by the medical vendor, Plaintiff was approved by the medical vendor to receive double-trays from August 25, 2023 – October 31, 2023. **Id. at ¶ 9.** This order was not discontinued until February 26, 2024. **Id. at ¶ 9.**

Since the discontinuation of the double-trays, Plaintiff contends that he received 990 calories on March 7, 2024 **(Simmonds' March 14, 2024, Decl. at ¶¶ 7-10 [Doc.100-1])**; 1,200 calories on March 11, 2024 **(Simmonds' March 14, 2024, Decl. at ¶¶ 15-17 [Doc.100-1]**; and 1,588 calories (1,430 of which he could eat) on March 15, 2024 **(Simmonds' March 15, 2024, Declaration at ¶¶ 1-3 [Doc. 100-3])**. Sheriff Maddox concedes that the calories are marked on the certified kosher meal packages as referenced on pg. 6 of Plaintiff's March 14, 2024 Declaration, but there is no indication in either of the submitted Declarations that Plaintiff is qualified to render opinions regarding the sufficiency of the number of calories contained in the food he contends he was served. See *Jones v. Western Tidewater Regional Jail*, 187 F. Supp. 3d 648, 657 (E. D. Virginia 2016) (finding plaintiff failed to prove an objectively serious nutritional deprivation because "[o]ther than his own unsupported allegations . . . [p]laintiff has not provided admissible evidence to

3

establish that he suffered adverse physical effects from the meals he received"); see also *Pearson v. Ramos*, 237 F.3D 881, 886 (7th Cir. 2001) (a prisoner "[w]holly lacking in medical knowledge" cannot give expert medical testimony).

Additionally, in *Robbins v. Robinson,* 782 Fed. Appx. 794 (11th Cir. 2019), a Muslim inmate incarcerated at Valdosta State Prison filed a *pro se* 42 U.S.C. § 1983 complaint against the warden and Food Service Director, alleging that they forced him to choose between violating his religious dietary restrictions or suffering malnutrition. *Id*. at 796. The defendants filed a Motion to Dismiss for failure to state a claim which was granted. On Appeal, the Eleventh Circuit noted that while the inmate pled that his meals lacked a sufficient number of calories and contained only half the nutritional value of normal meals, a reversal of defendants' dismissal was warranted as the inmate's allegations that the food was nutritionally inadequate was "bolstered by his additional allegation that he had manifested symptoms of deteriorating health serious enough to warrant a conclusion by prison medical professionals that intervention and a change in diet were needed." *Id*. at 802.

Contrarily, while the current case is in a different procedural posture, the same analysis should apply here – to wit, Plaintiff contends that Sheriff Maddox is in violation of the settlement agreement as he is not receiving the requisite caloric intake (which is denied), yet he has not introduced any credible evidence or shown

4

the manifestation of any symptoms of deteriorating health which could illustrate a lack of proper caloric intake. As such, Plaintiff's declarations concerning his weight loss and calorie servings are speculative, unsubstantiated and/or contradicted by the record and should not be considered. See *Rodriguez v. Bryson*, 2019 WL 13193452, at *16 (M.D.Ga., 2019)(finding that Plaintiff's contention that he lost one-third of his daily calories due to Ramadan cannot be accepted as true as it is not supported by evidence and is merely speculative).

II.   **Sherif Maddox is not in violation of the settlement agreement.**

While Sheriff Maddox agreed to ensure that Plaintiff's meal contain the requisite number of calories, it goes without saying that she is not personally involved in preparing inmate meals, is not the subject matter expert on how to prepare inmate meals, nor is she qualified to render an opinion as to the sufficiency of the calories contained in the meals. For that reason, Sheriff Maddox offers the affidavits of Aramark's Food Services Manager (Maryanna McCray) and Aramark's Registered and Licensed Nutritionist (Monique Skowronski). Per these affidavits, based on Plaintiff's alleged allergies, a "meal pattern" was prepared for Plaintiff by Ms. Skowronski. **McCray Affidavit at ¶ 6 (attached hereto as Exhibit B), and Exhibit 1; see also Skowronski Affidavit at ¶ 9, (attached hereto as Exhibit C), and Exhibit 1.**

5

The meals are prepared by Aramark based on the meal pattern and breakfast, lunch and dinner for Plaintiff contain the items listed on Plaintiff's meal pattern. **Id. at ¶¶ 7, 10, see also Exhibit 1**. Since April 2023, Aramark has been preparing Plaintiff's meals which constitute a weekly average of 2500 calories per day. **Id. at ¶ 13**.

Specifically, the breakfast Aramark prepares for Plaintiff consist of 958 calories. **Skowronski Affidavit at ¶ 10**.[2] The lunch and dinner Aramark prepares for Plaintiff consists of certified Kosher meals from "My Own Meals" plus additional food. **Id. at ¶ 11**. The prepacked meals average 362.5 calories (Beef stew – 352 calories; Mediterranean Chicken – 331 calories; My Kind of Chicken – 346 calories; and World Stew – 421 calories). **Id**. If Plaintiff consumes it all, the total average for lunch and dinner is 790.5 calories.[3] **Id**. Mathematically speaking, as breakfast is 958 calories, lunch averages 790.5 calories, and dinner also averages 790.5 calories, Plaintiff is provided an average of **2,539** per day.

---

[2] Fresh fruit – 82 calories; Hot corn grits – 151 calories; Sunbutter – 440 calories; Jelly (2) – 60 calories; Rice cakes (4) – 140 calories; Kosher margarine (2) – 46 calories; Sugar packets (3) - 33 calories; Fruit drink – 6 calories for a total of **958** calories.

[3] This includes: Rice cakes – 140 calories; Tossed salad and dressing – 154 calories; Fruit juice or fruit – 82 calories; Kosher margarine (2) – 46 calories; Fruir drink – 6 calories for a total of **428** calories.

Per the express language of the settlement agreement, Sheriff Maddox agreed that the meals "must contain" a minimum of 2,500 calories per day. Based on all of the above, Sheriff Maddox is not in violation of the settlement agreement as it relates to the number of calories served to Plaintiff and counsel is not entitled to an award of attorney's fees. But in the spirit of good faith and even before this motion was filed, Sheriff Maddox and Aramark agreed to begin a process to verify Plaintiff's meals with the initials of both an Aramark and Sheriff employee, and take pictures of Plaintiff's trays (at least until the conclusion of Ramadan which is expected to end April 9, 2024). **McCray Aff. at ¶¶ 11-12, see also Exhibits 2 and 3.** This will help resolve any factual disputes about the contents of Plaintiff's meals and the number of calories served. Additionally, in hopes of further clarifying what was actually delivered to Plaintiff, Sheriff Maddox respectfully recommends that Plaintiff be required to sign a verification each time he receives his meal[4].[5] These documents will be maintained by Aramark and DKSO.

---

[4] Currently, the time of Plaintiff's meal distributions are entered separately into the jail's management system ("Odyssey)").

[5] This recommendation is based in part on the fact that despite Plaintiff's meal pattern (**Ex. 1 to McCray's Aff.**), Plaintiff contends that on more than one occasion, he received kosher lasagna. See **Doc. 100-1 at pgs. 6-7**. Due to his alleged gluten allergy and dairy intolerant, kosher lasagna is not a listed item on Plaintiff's meal pattern.

## **CONCLUSION**

For the reasons stated above, Sheriff Maddox respectfully requests that Plaintiff's Emergency Motion to Enforce Settlement and all associated relief be denied.

Respectfully submitted this 21st day of March, 2024.

>LAURA K. JOHNSON
>Deputy County Attorney
>Georgia Bar No. 392090
>
>*/s/ Nikisha L. McDonald*
>NIKISHA L. MCDONALD
>Supervising County Attorney
>Georgia Bar No. 489573

PLEASE ADDRESS ALL FUTURE
COMMUNICATIONS TO:

**Laura K. Johnson**
Deputy County Attorney
lkjohnson@dekalbcountyga.gov

**Nikisha L. McDonald**
Supervising Attorney
nmcdonald@dekalbcountyga.gov

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **NORMAN SIMMONDS,** )<br>Inmate X0233489, )<br> )<br>**Plaintiff,** )<br> )<br>v. )<br> )<br>**MELODY M. MADDOX, et al.,** )<br> )<br>**Defendants.** )<br>_____ ) | Case No. 1:22-cv-01479 VMC<br>Hon. Victoria M. Calvert |

### CERTIFICATE OF SERVICE

I hereby certify that, on this day, I electronically filed the foregoing **SHERIFF MELODY M. MADDOX'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION TO ENFORCE SETTLEMENT** with the Clerk of the Court using the CM/ECF system which will provide electronic notice to the following counsel of record:

**Council on American-Islamic Relations – Georgia Chapter**
Murtaza Khwaja
mkhwaja@cair.com
Javeria Jamil
j-jamil@cair.com
235 Peachtree Street, Suite 901
Atlanta, GA 30303
Phone: (404) 239-2086
Fax: (470) 570-0389

**CAIR LEGAL DEFENSE FUND**
Lena F. Masri
lmasri@cair.com
Gadeir I. Abbas
gabbas@cair.com
Justin Sadowsky
jsadowsky@cair.com
Kimberly Noe-Lehenbauer
knoelehenbauer@cair.com
453 New Jersey Ave., S.E.
Washington, DC 20003
Phone: (202) 742-6420
Fax: (202) 488-0833

Respectfully submitted this 21st day of March, 2024.

/s/ *Nikisha L. McDonald*
NIKISHA L. MCDONALD
Supervising County Attorney
Georgia Bar No. 489573